**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

EXEQUIEL MORENO MORENO,

        Petitioner,

v.                                           No. 2:26-cv-00787-DHU-DLM

PAMELA BONDI, Attorney General of the United States;
KRISTI NOEM, Secretary of the U.S. Department of Homeland
Security; and DORA CASTRO, Warden of the Otero County
Processing Center; in their official capacities,

        Respondents.

### <u>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS</u>

THIS MATTER is before the Court on Petitioner Exequiel Moreno Moreno's Amended Petition for Writ of Habeas Corpus ("Habeas Petition"). Doc. 6. Petitioner alleges that he is being unlawfully detained in violation of the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment.[1] *Id.* ¶¶ 48-57. Petitioner asks this Court to order Respondents to immediately release him from custody, or, in the alternative, order Respondents to provide him with a constitutionally adequate bond hearing pursuant to 8 U.S.C. § 1226(a) within two (2) days. *Id.* at 11 ¶ d. Having considered the parties' briefs and the relevant law, the Court **GRANTS** Petitioner Exequiel Moreno Moreno's Petition for Writ of Habeas Corpus.

---

[1] Petitioner also alleges that Respondents have unlawfully detained him in violation of the Administrative Procedure Act ("APA") *Id.* at 10. However, because the Court grants Petitioner's Habeas Petition on his INA and Due Process claims, the Court "decline[s] to address th[is] remaining claim[] of error." *Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002).

# I.
# BACKGROUND

1. Petitioner Exequiel Moreno Moreno is a native and citizen of Nicaragua who entered the United States without inspection in November 2021. Doc. 6 ¶ 14. Since his entry, Petitioner has accrued no criminal history other than minor traffic violations. *Id.* ¶ 18.

2. Upon entry, Petitioner was detained by immigration officials. *Id.* ¶ 15.

3. Petitioner was issued a Notice to Appear and placed in removal proceedings. Doc. 6-3 at 2-4. His Notice to Appear charged him as being a noncitizen present in the United States who had not been admitted or paroled. *Id.* at 2.

4. On or about November 19, 2021, Petitioner was released on an Order of Release on Recognizance. Doc. 6 ¶ 15. Since his release, Petitioner has complied with all release requirements. *Id.* ¶ 17.

5. Following his release, Petitioner established a life in the United States. He married and took care of his family. *Id.* ¶ 19.

6. At some point, Petitioner was also issued an Employment Authorization Document, better known as a work permit, and maintained steady employment. Doc. 1 at 1. His work permit remains valid until 2029. *Id.*

7. On January 8, 2026, Petitioner was re-detained by Immigration and Customs Enforcement ("ICE") at a medical clinic. Doc. 6 ¶ 16.

8. Petitioner was eventually transferred to the Otero County Processing Center in Chaparral, New Mexico, where he remains detained. *Id.* ¶ 22.

On March 16, 2026, Petitioner filed a *pro se* Habeas Petition. Doc. 1. Petitioner subsequently obtained counsel and filed an Amended Habeas Petition. Doc. 6. In his Amended Petition, Petitioner argues that his detention is governed by 8 U.S.C. § 1226(a), rather than 8 U.S.C.

2

§ 1225(b)(2)(A), because he was already residing in the United States when he was re-detained. *Id.* ¶ 49. Petitioner further argues that his re-detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 52-57. He asks this Court to 1) assume jurisdiction over this matter; 2) order that he not be transferred outside of the District of New Mexico while his Habeas Petition is pending; 3) issue an Order to Show Cause directing Respondents to show cause why the Petition should not be granted within three (3) days; 4) issue a Writ of Habeas Corpus requiring Respondents to immediately release him from custody, or, in the alternative, order Respondents to provide him with a constitutionally adequate bond hearing pursuant to § 1226(a) within two (2) days; 5) order that, at a bond hearing, Respondents shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence that he is a flight risk or a danger to the community; 6) declare that his continued detention is unlawful; and 7) grant such other and further relief as the Court deems just and proper. *Id.* at 10-11.

On March 17, 2026, this Court issued an Order to Show Cause, requiring Respondents to respond to the Petition within ten (10) business days. Doc. 4.

On March 30, 2026, Respondents filed their response to the Habeas Petition. Doc. 8. In their response, Respondents do not dispute Petitioner's facts. *See id.* Respondents acknowledge that Petitioner is subject to the detention provisions of § 1225 or § 1226. *Id.* at 2. Respondents' position is that Petitioner is subject to mandatory detention under § 1225(b)(2)(A) based on the plain language of the statute. *Id.* at 2. However, Respondents also acknowledge that this Court reached the opposite conclusion in *Requejo Roman v. Castro*, 816 F.Supp.3d 1267 (D.N.M. 2026). *Id.* Respondents also concede that the facts of this case "are not materially distinguishable [from *Requejo Roman*] for purposes of the Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." *Id.* Respondents further concede that the legal issues

3

in this case are similar to the issues addressed by this Court in *Vega Uribe v. Noem*, No. 2:25-cv-01139-DHU-KRS, 2026 WL 127621 (D.N.M. Jan. 16, 2026). *Id.* at 2 n. 2. Respondents do not address Petitioner's due process argument and ask the Court to decline to consider it as well. *Id.* at 1 n. 1.

On March 30, 2026, Petitioner filed his reply. Doc. 9. In his reply, Petitioner notes that Respondents do not address Petitioner's due process argument. *Id.* at 1. Petitioner reiterates his arguments that his detention is governed by § 1226(a) and that his re-detention without a bond hearing violates his due process rights. *Id.* at 2-4. Petitioner further argues that the appropriate remedy in this case is his release. *Id.* at 5-6.

On May 11, 2026, Petitioner filed a Motion for Temporary Restraining Order ("TRO"). Doc. 10. In his Motion for TRO, Petitioner requests that the Court order his immediate release from custody. *Id.* at 12.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing he is being unlawfully detained in violation of the INA and the Due Process Clause.

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

4

## III.
## DISCUSSION

### A. Petitioner's Re-Detention Without a Pre-Deprivation Hearing Violated His Due Process Rights

Petitioner argues that the Due Process Clause bars Respondents from re-detaining him without a bond  hearing. Doc. 6 ¶¶ 52-57; Doc. 10 at 3-4. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989).

### 1. Petitioner Possesses a Protected Liberty Interest

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that Petitioner has a protected liberty interest in his release from immigration custody. Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972). *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled him "to do a wide range of things," including to "be gainfully employed" and "be with family." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody on his own recognizance in November 2021. Doc. 6 ¶ 15. He married and took care of his family. *Id.* ¶ 19. He was issued a work permit and maintained steady employment. Doc. 1 at 1.

This Court, and at least one other in this District, has found that noncitizens acquire a liberty interest once released from immigration detention. *See Garcia Domingo v. Castro*, 806 F.Supp.3d 1246, 1252 (D.N.M. 2025) (Urias, J.) (at TRO stage, finding petitioner released by the Office of

Refugee Resettlement demonstrated a substantial likelihood of success on claim that he possesses a protected liberty interest in release from detention); *Cuya-Priale v. Castro*, No. 2:25-cv-01166-KG-DLM, 2025 WL 3564145, at * 2 (D.N.M. Dec. 12, 2025) (Gonzales, J.) (finding the same at the TRO stage for a petitioner released from detention to seek asylum). Neither Respondents nor the Court can identify any factual distinctions in this case that warrant a different conclusion with respect to this Petitioner's liberty interest.

  2.  A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained

Having found that Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335, 96 S.Ct. 893 (1976).

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. As mentioned previously, Petitioner was out of immigration custody since November 2021 before being re-detained by ICE, during which time his interest in release grew stronger as he lived freely and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. His private interest in freedom from detention is therefore substantial.

With respect to the second *Mathews* factor, the Court also finds that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner and has not shown a change in circumstances or otherwise explained why re-detention is necessary. A pre-deprivation hearing would likely attenuate this risk, but Respondents provided no such hearing to Petitioner before re-detaining him.

Finally, the Court finds that the third *Mathews* factor favors Petitioner as well. Respondents' interest in placing Petitioner in detention absent some reason for doing so is low. Moreover, requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration laws; it merely ensures its enforcement tactics comport with due process. Further, the effort and costs of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that under the three *Mathews* factors, Petitioner should have received a pre-deprivation hearing prior to being re-detained.

### B. Petitioner's Ongoing Detention Without a Bond Hearing Is Also Unlawful

Given the Court's finding that due process requires Petitioner's release, the Court need not make a determination regarding Petitioner's detention authority and entitlement to a bond hearing. However, it is worth noting that this case is not the first to raise this issue in this Court. In fact, as Respondents acknowledge, the Court has already considered the statutory and constitutional issues raised by Petitioner with regard to 8 U.S.C. §§ 1225 and 1226.[2] *See Requejo Roman*, 816 F.Supp.3d

---

[2] The Court notes that the Second, Sixth and Eleventh Circuit Court of Appeals have analyzed this issue and reached the same conclusion. *See Barbosa da Cunha v. Freden*, -- F.4th--, 2026 WL 1146044 (2nd Cir. 2026); *Lopez-Campos v. Raycraft*, --F.4th--, 2026 WL 1283891 (6th Cir. 2026); *Hernandez Alvarez v. Warden*, -- F.4th--, 2026 WL 1243395 (11th Cir. 2026). The Court also acknowledges that the Fifth Circuit and Eight Circuit Court of Appeals have reached the opposite conclusion. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, --F.4th--, 2026 WL 819258 (8th Cir. 2026). The Tenth Circuit Court of Appeals has not yet addressed the issue.

1267 (D.N.M. 2026); *see also Velasquez Salazar v. Dedos*, 806 F.Supp.3d 1231 (D.N.M. 2025); *Vega Uribe v. Noem*, No. 2:25-cv-01139-DHU-KRS, 2026 WL 127621 (D.N.M. Jan. 16, 2026); *Mendoza Rivas v. Noem*, No. 2:25-cv-01311 -DHU-KK (D.N.M. Feb.3, 2026); *Garcia Sanchez v. Noem*, No. 2:25-cv-01293-DHU-SCY (D.N.M. Feb. 5, 2026); *Chen v. Unknown Warden*, No. 1:26-cv-00125-DHU-JFR (D.N.M. Feb. 19, 2026); *Castellanos Haro v. Noem*, No. 2:26-cv-00175-DHU-LF (D.N.M. Feb. 26, 2026). Because the facts here are not materially different than those this Court analyzed in previous cases, the Court's conclusion is the same. Petitioner, who entered the United States over four years ago, was arrested inside the United States after entering, and was released on his own recognizance, is properly detained pursuant to 8 U.S.C. § 1226. For a detailed account of the Court's reasoning on this issue, see *Requejo Roman*, 816 F.Supp.3d 1267.

**C. Immediate Release Is the Appropriate Remedy**

While Petitioner is entitled to a bond hearing while detained, such a remedy would not adequately address the most concerning violation present in this case—Respondents' initial re-detention of Petitioner without due process of law. *See, e.g.*, *E.A.T.-B. v. Wamsley*, 795 F.Supp.3d 1316, 1324 (W.D. Wash. 2025) ("[A] post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

Several courts analyzing similar facts, including this one, have found that immediate release is the appropriate remedy when the Government's re-detention of someone violates their due process rights. *See, e.g.*, *Wamsley*, 795 F.Supp.3d 1316 (holding that a noncitizen previously released on an order of recognizance had a liberty interest in his continued release, that the *Mathews* factors required a pre-deprivation hearing before any re-detention, and that the appropriate remedy was release); *Valdez v. Joyce*, 803 F.Supp.3d 213 (S.D.N.Y. 2025) (finding the

same); *Garcia-Domingo v. Castro*, 806 F.Supp.3d 1246 (at TRO stage, ordering immediate release of petitioner previously released by the Office of Refugee Resettlement and re-detained without a pre-deprivation hearing); *Alfaro Herrera v. Baltazar*, No. 1:25-cv-04014-CNS, 2026 WL 91470 (D. Colo. Jan. 13, 2026) (finding release the appropriate remedy to remedy unlawful re-detention of noncitizen previously determined by the Office of Refugee Resettlement not to be a flight risk or danger); *Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025) (finding, under *Mathews*, that revocation of Petitioner's release on recognizance without an opportunity to be heard deprived him of his due process rights, and ordering his immediate release); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528 (AT), 2025 WL 1927931 (S.D.N.Y. July 13, 2025) (granting noncitizen's request for immediate release when she was re-detained without notice or hearing after previous release on her own recognizance). This Court concludes the same and finds that the only adequate remedy for the due process violation here is Petitioner's immediate release.

## IV.
## CONCLUSION

For the reasons stated above, Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 6) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner within **twenty-four (24) hours** of this Order and subject him to the same terms as his original Order of Release on Recognizance. Unless and until Petitioner's Order of Removal becomes final, Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing, that Petitioner is a danger to the community or a flight risk.

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Thursday, May 14, 2026, confirming Petitioner's timely release.

9

Finally, because the Court is granting Petitioner relief in this Order, Petitioner's Motion for TRO (Doc. 10) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

10